Good morning, Your Honors. May it please the Court, David Anicarico for Appellant Cesar Paz-Negrete. If I may, I'd like to reserve two minutes for rebuttal. Sure. Thank you. Appellant's deportation was ineffective for purposes of the unlawful reentry charge for three reasons. The notice to appear was missing critical information. Second, the government ignored a federal court order not to deport him. And third, California's assault with a deadly weapon isn't a crime of violence under federal law. Was it really a court order not to deport him? Yes, it was, Your Honor. Was it an order for notice? I want notice if you're going to. This wasn't simply a notice requirement, Your Honor. It said in bold capital letters, the government shall not remove the petitioner without providing adequate notice so that the court could address important motions, such as the stay motion that he had filed when the government then went ahead and deported him anyway, without even opposing that motion. The purpose was so that the court could address preliminary motions such as a stay. And in fact, he did move to stay. So this was essentially, for all intents and purposes, a stay because the court said, do not remove this man without condition precedent, and the condition precedent wasn't met. If we find that it wasn't a stay, then what? It was still a federal court order not to deport him and had the same effect here. And the most analogous case from this court is Singh, where the federal court's order, where he was deported in contravention of the stay, and that for the collateral consequences of it. Normally, the court wouldn't have had jurisdiction over the person because he had been removed. But the court said that deportation was invalid, so it retained jurisdiction. And then in the case most directly on point, Furman-Rodriguez, the court applied this court's decision in Singh to an illegal reentry case like this one. It dismissed the indictment in the 1326 case because the defendant had been denied a stay. It held that that failed to meet the prior deportation element of the 1326 charge as a matter of law. And then finally, this court's decision in Mendez is analogous. This was in the 28J letter, where the government deported the person without the required notice to his counsel. It didn't constitute a departure within the meaning of jurisdictional statutes. And so it's because if the government violates a court order not to deport someone, that deportation then lacks the legal effect that it otherwise would have had. So the deportation was inoperative. The deportation element was lacking, and the motion to dismiss should have been granted. What if the government ignored an order that the court did not have jurisdiction to enter? Because we have a district court through a magistrate judge order, and it seems to me this is typically within the jurisdiction of the Court of Appeals. The court most certainly had jurisdiction to enter a stay order. It just didn't have jurisdiction to grant the ultimate relief that he was seeking. But it's undisputed in this case, the government has not disputed, that federal courts always have the inherent authority to stay the matters before them in order to make preliminary rulings before irrevocable harm takes place. So the court certainly had jurisdiction to address the motion, it just didn't have, excuse me, his petition. It just didn't have the ultimate authority to grant the relief he sought. But it certainly had the authority to order a stay. Counsel, you started by saying that you're persisting with your argument regarding the notice to appear? I think for purposes of today, Your Honor, we're just preserving that argument. Okay, all right. Yes, and certainly sticking with the third argument as well, assault with a deadly weapon. I understand that some of the appellant's claims have been argued to, you know, are arguing that the court should reach a different opinion than prior panels have because the cases are distinguishable or have been invalidated by later decisions. But if this court finds the issues to have been nonetheless urge the court in its opinion to express any doubts that it has about those prior cases to aid him in his seeking on bond purview. But on that point, this court isn't bound by the Vasquez-Gonzalez decision finding that assault with a deadly weapon was a crime of violence because the Supreme Court's later decision in Borden explained what federal, what recklessness means for a recklessness mens rea is not enough for a crime of violence. And Vasquez-Gonzalez misstated the holding of the California Supreme Court case Williams when it found that assault with a deadly weapon requires intentional conduct. Oh, even if we agreed with you that we had misstated that, why do we have the power to overturn that? One of the cases submitted in a 28-J letter was for the purpose of showing that where a court has misstated the holding of a prior court, that a future panel isn't bound by that, by that explanation of that prior holding. I don't, I don't think I've ever heard that principle. Can you give us an example of where, of where we have, of where one panel has said, has said a prior panel, that would, that would just open up everything. We could just say, well, you misunderstood the Supreme Court case, so we're just going to hold differently. That's a, that's a form that seems like a formula for chaos. The, the only, the only example that I have at hand is the one that is in the 28-J letter. I apologize that the case name isn't on the tip of my tongue right now. But that, the Ninth Circuit there basically said, well, our prior case flatly misstated the holding of, of another case, and so we're not bound by that court's description of that holding. So it's, it's narrow, it's a narrow circumstance, but it does exist, Your Honor. It sounds like the alternative argument is the one that you just made, which is if we have doubts about the precedent that you'd want us to, or the, the viability of the precedent, that you would want us to recommend en banc review. Is that your position? That's right, that's right, Your Honor. All right. Would you like to reserve the bulk of your time? Yes, thank you. You bet. Good morning. May it please the Court, Benjamin Hawley for the United States. Beginning with that last point, the, the case that counsel cited in the 28-J letter, that was a panel opinion in a case that eventually went en banc, so obviously the panel opinion itself was vacated. But regardless, the example that was used there was if the court was considering, for example, the constitutionality of Section 12, and in its holding, accidentally wrote Section 21 is unconstitutional, just a typo, essentially. That would not be holding, or a... That's a scrivener's, that's a scrivener's error. Exactly. And so that panel had said, if there's something plainly erroneous along those lines, then it would not necessarily be binding. But here that's not what we have. Vasquez-Gonzalez considered the statute, it considered people v. Williams, the California case, this was not just misstating it, it was analysis that, that the defense disagrees with, but that's, this panel was then bound by. Would you turn to the argument that counsel started off with regarding the stay? Of course. So two responses, one kind of more in the weeds, factual, but then one legal. I'm having a hard time understanding you because you're speaking really fast. I apologize. Could you slow down a little bit? Thank you. So beginning with the legal issue, even if there was a violation of a stay order, which there was not, it wouldn't matter for this criminal prosecution because the defendant still has to meet all three prongs of 1326D. And that's what the Supreme Court talked about in Palomar. So they also, in doing that, rejected the argument that the defendant makes here, that there's some kind of difference between a procedural argument under 1326D and a substantive argument that is both Mr. Paz Negrete and Mr. Palomar Santiago had argued, well, my, my removal was void ab initio. It was just invalid from the beginning. Therefore, I don't have to comply with 1326D and the Supreme Court in Palomar Santiago in the, in the penultimate paragraph said that that's not the case. If it's a collateral attack, which this is in this 1326 context, you have to comply with all three subsections. So here, even assuming there was an error that was prejudicial, Mr. Paz Negrete was not deprived of judicial review. He has, he has manifestly had judicial review of the habeas case, of the immigration case itself, and obviously of this case. So that's the legal answer. In terms of the facts, I think the timeline is important here. So Mr. Paz Negrete was put in removal proceedings and, and ordered removed in June of 2016. So a few months later, he appeared in front of the immigration judge, went through those proceedings, and was ordered removed. He was then, he then filed, or before that, he had filed a habeas petition, and that's the habeas case that counsel was discussing. He's been physically removed in May of 2017. The habeas judge's order, the magistrate judge's order said, when a petitioner or final order of removal, do not remove without notice. The magistrate judge noted, and this is at page 51 of the supplemental excerpts of record later on in the case, the government reasonably read the habeas petition, which was pro se, as not challenging a removal order, because when it was filed, there was no removal order. And that was the most logical reading, as the magistrate judge said. So he was then eventually removed, subject to the order that later came. He moved to stay that removal order with the BIA, that was denied. He removed, he moved to stay that removal order with this court, and that was denied. It was only at that point that he was then removed. And as the magistrate judge later determined, that court, the habeas court, had no jurisdiction to consider a removal order on the substance regardless. And it was only after counsel was appointed, which for his habeas case, after he was removed, that then counsel argued, well, he was moving not only about detention under habeas, but also the removal order. The magistrate judge said, well, it's not entirely clear because it was pro se. I will consider both. The detention is moot. The removal order, I have no jurisdiction, and therefore, there was no problem. But again, even if there had been a stay order, even if it was violated, he's not met the requirements under 13-2016. I'm happy to answer any other questions the court has, if any. Well, the magistrate judge said that there was a violation of the spirit of the order. Does that matter in any respect? No. No. One, because it was not the actual order. And two, because the later analysis by the magistrate judge, again, page 51 in the supplemental excerpts, says the government reasonably read it the way the government read it as not actually challenging the removal order, but rather just going to detention.  Thank you for your argument. I think you have about three minutes. There you go. Three minutes on the clock. Go right ahead. Thank you. On that last, on the point of that it being reasonably read as not challenging a final order of removal, that was not how the judge read it when they said, basically, you violated my order. And secondly, if there was any initial lack of clarity in Appellant's papers as to whether he was challenging only his detention or also a final order of removal, that clarity was, that became clear that he was challenging the final order of removal when he moved to stay the order of removal. That is a challenge to the removal order. And instead of responding to the stay motion, the government simply deported him and then had the temerity to argue that his case was now moved. The habeas, I want to, I want to emphasize as well that the habeas court didn't have jurisdiction to order the ultimate relief he sought, but it most certainly had jurisdiction to stay the proceedings before it, to stay the deportation order before it, while it addressed the petition. And so the government violated that. The magistrate judge would be issuing a stay in order to preserve what? To keep him in jail so they consider the habeas corpus? If he issued habeas corpus, then the United States would have to let him out of jail, but it could deport him at any time? It all feels a little, it all feels a little backwards. It all feels a little circular and a little odd. The magistrate judge can't hear a challenge to the, to the removal order. That's not within his jurisdiction. That goes from the, from the IJ to the BIA to us. Am I right on that? It's correct. Okay. So this was, this is just a challenge to keeping him in a detention facility. Presumably because, because they could have gotten a bond or there would be some other reason for, for letting him remain in the United States and outside of detention while his immigration proceedings go forward. This was a legal permanent resident of the United States continuing to challenge his removal. Saying, don't remove me from the only country that I've lived since I was a small child without addressing my petition first. And, but it's a petition to do what? It's a petition to get him out of a detention facility, right? Because he was an LPR, he probably has a pretty good argument. I've been here for 30 years or whatever amount of time it was that he'd been here. I've been here for a long time. So there's no reason to keep me in a detention facility while my immigration proceedings are going forward. Okay. That's why, I think that's why he filed the habeas corpus, right? Well, and ultimately he challenged his removal as well. Right. Can he challenge his removal before the magistrate judge? He can challenge it. And then the judge had to dismiss that portion for lack of jurisdiction. Couldn't give the ultimate ruling. Right. But that's, that's what I'm saying. Sure. Okay. Okay. He files it in, in theory, but can the magistrate judge, magistrate judge have any power to, to override the, to the IJ's decision on the, on the deportation, on removal? That's not the procedure, right? That's not the way that those things get done. So in other words, if she ordered, if the magistrate judge ordered, I, recognizing the limits of jurisdiction said, you have, give me notice, give me notice before deporting. If I, if I could just read it that way, as opposed to it being a stay, I think the question then becomes, what would the magistrate judge have done, could have done? It depends on what relief he's seeking. If, right, but if he's, if what he's seeking is to get out of the detention facility while his immigration proceedings go forward in the regular course of those proceedings, IJBIA court of appeals, then it really is mooted if the United States deports him. He's out of, he's, he's out, he got his wish. He's out of the detention facility. Well, he was making that motion at a time that he was still challenging his order of removal. So the, the court most certainly didn't have the power to stay that deportation while his challenges were still occurring. And is that regular for a magistrate judge to issue stays of deportation pending proceedings in our court? Well, this was standard language in the, in the court. I mean, this was, this was an immediately ordered order once a petition like this was filed. Right, counsel, but, but, but, but the magistrate judge ordered, give me notice before you deport him. And I, I agree that at the time that order was entered, let's say it's not a stay, it's just give me notice because the magistrate judge recognized the limits of the jurisdiction there. But at the time it was entered, there was an ongoing removal proceeding. But my, my question is, you know, later when, when notice, had the government complied, that notice would have given to the magistrate judge at a time where the deportation proceeding was done, you know, it was over with. There was a final order of removal. So hence my question, what would the magistrate judge have done at that time had the magistrate judge received notice? This case is like Singh, Your Honor. Like what? Like the Singh case. Because there, it was, it was mooted by the fact that he, you know, the court's jurisdiction was essentially eliminated by the fact that he had been removed from the country. The court no longer had habeas jurisdiction over him. But the court said, no, that was carried out in contravention of a federal court order. And therefore, we're going to restore him, we're going to restore his rights. It's going to be a legally inoperative removal, because it was carried out in contravention of a state. So it's absolutely. Let's suppose, let's suppose that, that as soon as he got deported, that his lawyers went running into the magistrate and says, he's just been deported in violation of your order. And the magistrate gets really angry with the government says, boy, darn right. I told you, I'm going to order you to bring him back. And the government says, okay, got it. Bring him back. We bring him back into court. And now what? What does the magistrate judge do? What does the magistrate judge have the power to do? Nothing. I mean, under the facts of this, under the specific relief that he requested, the court didn't have the power to invalidate his, to invalidate his removal order. Right. The only thing you do is let him out of detention. The United States let him out of detention when they deported him. Effectively, they granted him the relief that he sought. Obviously, what he wanted was to go home to his house in the United States, but he was no longer in detention when they let him out. That's the relief he sought. He didn't get to go where he wanted to go, which was home to his house in the United States. He got sent back to Central America. I certainly can't argue that he wouldn't ultimately have been deported. That's not the nature of this argument. This argument is, when a deportation is carried out in contravention of a stay, or what, for all intents and purposes, is a stay, that that is legally inoperative when it comes to collateral consequences of that. That is not a statutorily valid removal. Okay, so can I just... You may ultimately have lost... Sir, sir, you're way over your time. Can I just ask one clarifying question, and then... Right. Is your position the same if they complied with this order, as Judge Fitzgerald said, with the spirit of the order, which is give the magistrate judge notice before they deported him, but that would have been after the final order had been entered in the removal case? Would your argument be the same? I'm sorry, one more time, Your Honor. I apologize. Judge Bybee was just positing a question about if the government had given notice to the magistrate judge after they had deported him. That was the premise of Judge Bybee's question. My question is, back it up one step further, because I think, arguably, there was an order here from the magistrate judge, the spirit of which was, give me notice before you deport him. If the government had complied with that order, and I think your point is well taken, they didn't, and it's not... That hasn't escaped our attention. But my question is, had the magistrate judge been given notice then, I think the then would have been, the situation would have been, there's a final deportation order entered. The magistrate judge has given notice. Okay, we're about to deport him. What could the magistrate judge have done at that point? In terms of stopping the removal, they couldn't have. Okay. That doesn't change the fact that there are consequences for the government violating a court's order. Okay. And the consequences is that that action doesn't have legal effect. All right. Let me just put one more hypothetical. Suppose that the government here said to Mr. Posner Gratte, okay, we're letting you out of detention. Now, that would moot all the proceedings before the magistrate, right? That would grant all the relief that he sought, which was Zahavia's order, ordering him out of detention, correct? If that's his only request, yes. Yeah, but that moots the proceedings before the MJ, right? If his only... And the following day, they could have then deported him. If the petition was only challenging his detention and he was let out, and then later all of his legal challenges to the removal order ended, at that point, he could be deported. If there wasn't this existing stay order or provisional stay or whatever you want to call it, this federal court order not to deport him without giving the court a chance to act. All right. We are indeed way over your time. So I'm going to thank you for your argument, both of you for your arguments, and we're going to take the case under advisement at this point. Thank you, Your Honors. Thank you. Thank you both.
judges: BYBEE, CHRISTEN, Fitzwater